This is the Department of the Army. All right, thank you. You're going to introduce student counsel. Yes, good morning. May it please the court, my name is Erika Hashimoto and I'm court-appointed counsel for Mr. Patel. With the court's permission, third-year law student Madeline Brown from the Georgetown Appellate Litigation Clinic will be presenting argument on behalf of Mr. Patel. Great, thank you. Whenever you're ready, Ms. Brown. May it please the court, the government has demonstrated a complete lack of care in following procedure, thereby destroying Mr. Patel's career. Mr. Patel's former private employer uploaded an unverified incident report onto a government database and the government has shared the existence of that report with other private employers, cutting Mr. Patel off from his field of employment. Failing to maintain only such information in the JPAS system as is necessary to accomplish the purpose of the Department of Defense, the DoD is violating Mr. Patel's rights under the Privacy Act. The government... Under the Privacy Act, how do you get around the Egan opinion? The government had no hand in generating or investigating this report. Moreover, there's nothing in the record suggesting that the incident report was used for anything, let alone a security clearance. And Egan is a case focused on a security clearance decision that the government is using to prevent the courts from hearing Mr. Patel's claim. Do you agree that Egan extends beyond the decision itself, sort of upstream into the process? Of making that decision? I do agree in instances, for example, in the case of Mallory, Egan... Right. So those are examples of upstream in the process, right? So that's the investigation or the psychological evaluation? Yes. And that's part of the process and it's upstream of the decision. So it's not, it's not limited to the decision itself. It includes the process? Yes, Your Honor. Why do I not consider the gathering of information as in Becerra, an investigation, the gathering of information in a database? Why is that not part of the process, just like in Becerra, just like in Mallory, that ultimately leads to the predictive judgment? I admit we have no predictive judgment being made here as far as Egan goes, but this is part of the process for making that predictive judgment. There is a distinction between the initiation of a security investigation. And in this case, nothing in the record indicating that the government has used or vetted this information in any way. Moreover, in the case like Becerra, it was investigating the plaintiff regarding his security clearance. In Mallory, it was investigating an individual regarding... Both of those are decisions by the government to gather information, right? Yes. And that's what an investigation is, is we've made a decision to gather information. And the Army is, not just the Army, but the government has made a decision to also gather information in the JPAS system, right? And it is upstream of the ultimate decision, just like an investigation is upstream of the ultimate decision. But why isn't that part of the process in the same way that an investigation is? Both of them are examples of the government gathering information to use to make the ultimate decision, right? That would be the Egan choice. Your Honor, I think it comes down to the government's ownership of the information in that in Becerra and Mallory, it was the government creating these questionnaires or information. In our case, it was a former employer called Credence who submitted this incident report. And these facts in the incident report are alleged and they have not been verified by Mr. Patel or to our knowledge by the government in any way. Once the report is submitted to the government, the government owns it, right? It's not like that belonged to somebody else, right? It was given to the government, right? So when you file a brief with this court, you filed it. It came to my office. It now belongs to the Fourth Circuit, not you. Like you can't come to my office and take it back. So it's mine, or my court's at least, right? So it's not an ownership. It doesn't seem like to me that they both seem to be forms, ways of gathering information. That's what I'm trying to understand is why I think of these two different sets of decisions for gathering information, why I should think of them differently. In both the Sarah and Mallory, the government made a clearance-related decision concerning the individual in that there's no clearance-related decision that has been made regarding Mr. Patel. The government agrees that his security clearance has never been in question. But doesn't Mr. Patel, even in his complaint, and Grant, I know it was a post-state complaint, but doesn't he even say that he was investigated in his complaint? I think it's like JA, I have eight, nine, where throughout the complaint, he's saying that the army was investigating him based on, and he goes through all of these reasons why, but he even thinks there's some investigation going on here, right? Mr. Patel may have believed at that point there was an investigation, but after our review of the Joint Appendix and what's on the record, there's no clear facts pointing to even the initiation of any government investigation here. What's on the record is that he alleged that in the complaint, as Judge Benjamin said, doesn't that matter? I mean, it's what he said, it's what started this whole thing. Yes, I'm not sure that, if that verifies or that there has in fact been an investigation, moreover, there's not that tied to national security. Do you take the allegations in his complaint as true? My apologies, Your Honor, we should take the allegations as true in his complaint. For your Privacy Act claim, what's the remedy that you seek? In regards to this court, we ask the court to hold that Egan does not bar Mr. Patel's claims and to remand back to the district court to decide on the merits of the claim. And if the district court were to get to the merits, what do you think the district court can do? Can the district court whine at the JPAS system, just sort of get a printout and he takes a red pen and the district court goes through and does... What do you want the district court to do? We're asking the district court to require the government to look at whether they complied with the Privacy Act. And we do not know exactly because there has not been discovery in this case, Mr. Patel has no way to know exactly what employers are seeing in the JPAS system, but we are requesting compliance with the Privacy Act and to fix any violations of the Privacy Act. We're not... So when you say fix, so if I assume for a minute that you have a violation of the what is it that you want the district court to do, right? So what would the district court... There's a violation of the Privacy Act, whatever that looks like with respect to the records that are in the JPAS. What is the district court to do? In other words, how is this like redressable? We're asking the district court to ask the Department of Defense in this case to comply with the Privacy Act. So there are allegations in the incident report that's in the JPAS that Mr. Patel... And facts in there that Mr. Patel believes are not true. And we would ask the DOD to go in and fix those facts like they did in Reinbold, for example. So the district court would order the Army to edit the information in the database? Yes. The Department of Defense. Yes, Your Honor. The Department of Defense said to... I keep doing that. That's my fault. And so... And you think that that doesn't implicate EGAN when what the Department of Defense does is that all information in there is to be considered for determining whether security clearance exists. I mean, the challenge is like what you're saying is we want the district court to order that the Department of Defense cannot consider some information in making the predictive judgment. That's what you're asking the district court to order. This is information that the Department of Defense cannot consider when making the predictive judgment. We're not asking them to not consider the information. We're asking them to verify the information. You said to delete it. You're saying to delete what you allege to be irrelevant and unnecessary information, right? Yes, Your Honor. Based on, I assume, the district court's judgment as to what is necessary and relevant to determining whether security clearance is appropriate. The district court gets to decide what's relevant to whether you get a national security clearance. Yes. And there's also DOD guidance to refer to, like on the DOD website. But you said yes, in answer to Judge Richardson's question, you said yes, the district court gets to decide what's relevant for security clearance purposes. Isn't that directly at odds with EGAN? Yes. My apologies. The district court cannot decide directly security clearance decisions, but we believe that the information in the JPAS system, which is a repository of employment information, is not directly bearing on an individual security clearance. An employer can submit anything into JPAS that's adverse to their employee. But you agree that what you're asking is the district court to require the Department of Defense to delete information from its database on the basis that the district court believes it, I think you started off by saying, that it is irrelevant and unnecessary to the national security determination that would ultimately be made. Yes, Your Honor. Mr. Patel has not had discovery, and he's facing ongoing harms from the action of the government. After having multiple job offers revoked and emails dismissed, Mr. Patel had to file a lawsuit here to figure out what was going on. For purposes of 12b1 subject matter jurisdiction, this is a narrow inquiry. EGAN prevents courts from second-guessing executive branch decisions about national security clearance. The district court mistakenly characterizes Mr. Patel's claim as challenging a national security decision, as challenging a security clearance decision, and thereby- What about your APA claim? Do you concede that that was brought for the first time on appeal, the APA claim? No, Your Honor. Mr. Patel invoked the APA in his pleading when he used distinct language and concepts of the APA, such as arbitrary and unpredictable. Then, in his response to the motion to dismiss, he further clarified using language like arbitrary and capricious. So, using language like arbitrary and capricious means that he invoked the APA? Did he invoke it specifically in his complaint anyway? Mr. Patel further asked for- alleged that there has been more- in addition to using the language, he challenged the actions of an agency and revoked- I mean, invoked- my apologies- invoked the APA by challenging the government's failure to give him proper procedures. He did not use the distinct- the words- The challenge with that, and this sort of raises an interesting question, we do give pro se complaints a liberal construction, but we like contrast that with a Supreme Court's repeated guidance that there is a party presentation principle. And so, if we don't get to make up claims, right, we can give it a liberal construction, right, but we can't make things up. In the language you cite to, you know, in paragraph 31 of the complaint, it falls in a count that your client identified as violates plaintiff's procedural due process rights. Don't I have to, like, read that out of the complaint to understand him to have been raising an APA claim? I mean, because it is relevant to a procedural due process claim, maybe, that the agency didn't follow its own regulations, right? So, that's pertinent to a procedural due process claim under the Constitution, but it's really hard to read that as making a, like, separate complaint that's not procedural due process. Mr. Patel also states that he is, quote, based on its decision, and he requests a permanent injunction prohibiting the government's revocation of his access card. So, the court is supposed to give him back his access card? No. By way of this injunction? We're asking for Mr. Patel to receive the process he was due, including a right to appeal the revocation of his access card here, not to receive back the access card. Not right away, at least. After due process, you would argue that he, if it turns out in his favor, then he gets the access card back. So, I don't understand that. So, because you say, at least, or your client says, issue a permanent injunction prohibiting the defendants from enforcing the decision to revoke the CAC, right? So, that if they can't enforce the revocation, that means he has it again, right? That's the, like, negative implication, right? So, I mean, he's asked to, like, have the district court decide that this information is not relevant to national security decisions and that he should have access to this particular facility. Well, in regards to the access card, the government has conceded that the Egan Bar wouldn't apply. So, we're not asking for the connect. Oh, your honor, is it okay if I continue speaking? But my apologies, could you ask the, just repeat? The question is, help me understand on the access card, what you would have the district court order? Like, what relief do you think the district court could order? Yeah, I think you seem to acknowledge, regardless of what's asked for in the complaint, that you cannot have the district court, like, grant an access card, right? You can't go print one off and hand it out. So, or order the DOD to do so. So, what is it that you think the district court, if you established your claim, should do here? We would like the district court to ask the Army to follow its own regulations by giving Mr. Patel a chance to respond to and appeal the decision. And as your honor previously said, if the agency cannot follow that, their own process, then might have to, at some point, stop blocking Mr. Patel's his CAC, his common access card. Okay. All right. Thank you, Ms. Brown. You have some time in rebuttal, and we'll hear from Mr. Assistant U.S. Attorney Peter Baumhart on behalf of the defendants. In this case, plaintiff wants a court to dictate what information the Department of Defense may consider in investigating and adjudicating a security clearance. But the Supreme Court and this court have been clear that the separation of powers prevents a court from interfering with how an agency makes predictive judgments about access to classified information. I think what appellant just wants is for the Department of Defense to follow its own procedures before, or at least that's their argument, before revoking the access card. So how does that require any judicial review of security clearance determinations? So I want to make clear that there are two actions here taken by two different entities that are subject to two different documents that preclude judicial review. The point about the access card is subject to cafeteria workers rather than EGIN. EGIN and this court's decisions construing EGIN have acknowledged this sort of pure process type claim. The cafeteria workers doesn't. The cafeteria workers itself was a due process claim based on summary exclusion and revocation of an access card. And so the regulations that plaintiff has been referring to, there is no pure process claim exception to the cafeteria workers bar. That would only be under EGIN. And the Army's process for revoking the CAC is not... But in cafeteria workers, the court said that it had followed the process, right? And certainly says that the Constitution provides no process, right? But why, assuming for a minute that it was properly presented, why couldn't there be a claim under the APA that you don't have to have process, but if you decide to create process, you got to follow it? Well, I don't think that there would be an issue with that sort of claim, but I would point out that the very regulations that plaintiff relies on for this due process, the process type claim actually exempts... Well, let me back up for one second. Well, I understand your merits argument. You might well be totally right. Is it F3? I totally get that argument, but we're not asking the merits question, right? We got to ask the threshold question. No, I understand your honor. I'm sorry. The point I was trying to make is that obviously we think that the record is clear that Yarvin never revoked his CAC. It just required its return upon his exclusion from the Polk building as part of normal checkout procedures. That was explained in our brief. But even what... I'm sorry. So the February 20th, 2020 letter suggests to me that they revoked the CAC? This is the one from the Army to Galareth? Yes. So that's an important letter because it actually doesn't say that his CAC was revoked. It says that his CAC was required to be returned. Now, there's a few ways that a CAC... I mean, I get we've got sliced things thin, but it is important because the regulations the plaintiff is referring to refer to when an adverse credentialing determination has been made that the person is unsuitable to hold CAC. But when, for instance, someone is separated from employment, they're required to return their CAC without any sort of adverse credentialing determination being made. Except that the incident report... Is the incident report still on the JPAS? The incident report is still in JPAS. And yet his security clearance hasn't been revoked and the CAC hasn't been revoked. It was just returned? That's right, Your Honor. So the... So what's the basis for maintaining the incident report on the JPAS? The incident report is there solely for review and a future clearance determination. And I want to make clear that what happened here factually is that the IR was submitted, I believe, on February 14th. He was terminated by Galareth on February 21st. In that time, the Army did not... Or excuse me... The Department of Defense had not investigated the IR, but it then lost the ability to do so because the DOD may only investigate and adjudicate incident reports when a clearance is needed. But then why isn't... Why shouldn't a parent be afforded some due process before this incident report is maintained on the JPAS when his security clearance hasn't been revoked and his CAC hasn't been revoked? So the... It's just out there with anybody for a negative implication for any future employer. Well, so the IR itself, the substance of the IR, my understanding is it is not viewable to anyone but DOD and whoever his employer is. Anyone else who is using JPAS would only see that... Future employers. Excuse me. Yes. So that's a problem for him. So why isn't he entitled to due process before that's just maintained on there for... So I think there's a bit of a mismatch on the due process part is that plaintiff has never... The only regulation or process the plaintiff has identified regarding the IR is this guidance that is issued to contractors about how they are supposed to use JPAS. And the idea that there's process before he... The IR is just simply held on JPAS. The process would be the government investigates the IR and ultimately makes a decision on it. And they have not been able to do that because DOD only has authority to investigate and adjudicate incident reports when a clearance is needed, such as when a person is employed or has an offer... He wouldn't be employed or get an offer, would he? Because when he applies to federal contractors, they would see this incident report that hasn't been validated. It's... Well, it hasn't been adjudicated. It's hard to see how a DOD could validate it without investigating it. Okay. Adjudicated or investigated. It's just out there with this negative inference for future... That future employees... Employers would see. So I don't see I'd ever get a job. So I want... There's a kind of peculiar factual scenario here because EGAN most often comes up when federal employees have had their clearance investigated or have had an adverse action taken against their clearance. And here, the investigation would have followed but for the fact that his private employer terminated him and thereby deprived DOD of the ability to investigate and make a decision one way or the other, whether it merited any action on his clearance or not. And so the idea is that this... Where the idea of why no process before the... Excuse me, the DOD can consider it comes in is EGAN, is that this is something that the DOD has to decide. They are the specialized decision makers with expertise in making these clearance decisions. And if EGAN stands for anything, it's that a court lacks that competence to make... But for the JPAS, I understand the due process argument, but why don't we look at the Prophecy Act as sort of Congress's effort to do what Judge Thacker has suggested here, right? The Privacy Act says basically this, right? That like if you've got records about somebody in the federal government, I'm obviously grossly simplifying, then you get a chance to make them accurate. So I'm just on the Privacy Act itself, leaving aside the EGAN issue. The Privacy Act has a very limited remedy and there is a noted fact and opinion distinction that is laid out in Reinbold. All right, but you want to talk about the merits of the Privacy Act. We're not going to reach the merits here, right? Except for a second that your alternative arguments on the merits are not what we're talking about. What I'm trying to ask is the question of, does the Privacy Act claim exist, right? Because it was dismissed as a 12B1, right? That this is EGAN barred. But EGAN leaves open this idea, maybe, that where there's like congressional authorization, it might look different. Well, so, and so here's congressional authorization, right? This is a Privacy Act and that authorization allows you to like go in and correct your records. So I believe I understand the part of EGAN you're referring to. And it would require specific congressional authorization to- And why specific? This is not specific. To adjudicate within the security clearance context. The Privacy Act doesn't say anything about the security clearance context. It's similar to how this court has declined to find such congressional authorization in Title VII, the Whistleblower Protection Act, a couple other statutes. And there's actually a regulation that specifically exempts, which we cited in our brief, specifically exempts documents used in the security clearance adjudication process from amendment or under the Privacy Act. So two questions. One, when I, if I wanted to say that the JPAS system is for the national security clearance process, how do I know that based on the record? I believe there's a few cases that we cited that recognize this and there was a JA site that I think was to a letter that was sent by a DOD entity that recognizes that fact. And then, so your point is that the word specific that I left out the first time, the word specific in that context would mean you would need an act that says what the Privacy Act says, but specific to like JPAS or information relevant to national security. I believe that is the upshot of EGAN and this and Campbell and I forget the third one, but it's, it's, it's, it has to be very clear statement by Congress that this is meant to interfere with the security clearance arena. So in practice, what does all this mean for appellant? What, what happens or would happen if he seeks employment with another federal contractor that requires security clearance? And this is hanging out there. If he, if he obtains employment with. Well, before he, how's he going to obtain, that's what I don't understand. How is he going to obtain employment with this incident report on the JPAS? Wouldn't they just see that and go, oh, red flag? No, I don't necessarily believe so. There's nothing certainly alleged in the complaint that this is like a death knell within the defense contracting industry. I mean, he has a list of specific jobs he's lost, but he's lost jobs already. He's he's well, so the Gallarapt job was because he could no longer access his work site. So he couldn't perform the work that he was hired to do. The loss of the second job, I believe is the only thing alleged in the complaint is that it resulted from sort of unspecified DOD contact. Which is a good, I mean, it's not unreasonable to assume that that unspecified DOD contact was, oh, this incident reports in the JPAS. So we're not going to deal with this. Well, respect to your honor, I would see DOD contact as some sort of reaching out by DOD, as opposed to just passively viewing this thing. Can I ask, maybe I'm not understanding this, maybe let me back up just a second, very simply. So if I wanted to, if I was in a contractor and I wanted to hire Mr. Patel, do I get, as a contractor, do I get access to what's in the JPAS system? So this specific answer, I don't believe is on the record. And my understanding is that the substance of the IR would only be viewable to the employer of the person whose account it is. And so another- It is viewable by at least an employer, maybe not a prospective employer, but at least an employer would be able to access, and that seems remarkable to me, that a federal contractor can look at all of the records in the JPAS about its employee? I believe so, your honor. It has to put up these people for clearances and sponsor them for clearances. So I think they would want to know sort of what they're, what they're not necessarily up against, but what the relevant information is. But you don't know if a prospective employer who is a national or a federal contractor has access to the JPAS? My understanding is that, and I don't know if this changes in the prospective employer context, but that anyone other than the actual employer would see only that there's an unadjudicated event. Unadjudicated event sounds pretty bad to a prospective employer when they have no idea what that unadjudicated event in the DOD system is, which he lost his CAC. So the CAC, yeah, the CAC again is sort of separate from- I understand your distinction there. It's not, didn't lose his security clearance. I don't know. It just seems, I might be, it just seems pretty challenging for Mr. Patel to get federal contractor employment again with this in the system unresolved. Well, it's sort of, again, it's fallen into this sort of lacuna of the DOD's authority. In the ordinary course, had he remained employed, the DOD would have investigated it. It just merely lacks the authority to investigate. And to, I believe, the point that Judd Richardson was making, the only way that it would require a court to go in and say that this is really necessary or relevant to a security clearance determination, which is, I think, the heart length of what Egan says courts can't do. So when he's seeking, for lack of a better, when he's seeking process, the process under DOD's regulations would not be in place until after, if he ever got another offer of employment from a federal contractor. And then they sought security clearance for him. Correct. That's when the adjudication of the IR would occur. And again, I want to distinguish because the process argument is largely tied to the Army's regulations about revocation, adverse credentialing determinations with respect to a CAC. And again, the only regulations cited with respect to the IR is not even a regulation. It's guidance to contractors, which is non-binding on DOD. And DOD's obligations are instead set out in the controlling executive order, which requires agencies to maintain potentially relevant information for a clearance in the person's file. You were earlier, you were about to talk about Rheinbold. I'm sorry?  Rheinbold. Yeah. So how is, because that deals with the Privacy Act. That case deals with, so I'm just curious as to what it, I think we cut you off, you were about to talk about Rheinbold. That relates to this case. Yeah. Plaintiff has argued that Rheinbold deals with the interplay between Egan and the Privacy Act. And I respectfully disagree. Of course, unlike here, the Privacy Act claim in Rheinbold did not challenge any documents that were used or were likely to be used in the future against the plaintiff's clearance. They postdated the suspension of his clearance. And then there was a proposed permanent revocation of his clearance that was overturned on administrative appeal. And that decision means, meant that the challenge documents, in fact, did not warrant any action against his clearance, which would effectively rule out them being so used in the future. So again, unlike the facts we have here, where it's clear in the record at JA54 that the IR will be adjudicated in a future clearance investigation. I thought your argument on Rheinbold was going to be that it was decided before Steelco, right? And so we now have this like strict order of operations that we have to address jurisdictional issues before we address the merits. But pre-Steelco courts, including this one, sort of had the belief that we could decide the easy question. And so we shouldn't infer from Rheinbold's rejection of the claim on the merits that it had any view on the jurisdictional decision. So, Your Honor, I think obviously we would have, you know, been happy to make that argument. But the issue is that I don't know that there's any indication in Rheinbold itself that an act because the court did deal with the Egan issue with respect to the plaintiff's Bivens claims in that case, which actually incidentally supports our point that it does apply to constitutional. The point being is that we can't draw an inference that the court considered and rejected the jurisdictional argument of Egan because it wasn't required to do so. Your Honor, so on that point, yes, we would agree that Rheinbold certainly didn't reject any Egan argument. And our view is just that the reason that it didn't seem to address Egan in the context was that there is a reason why it seems like Egan may not have even applied, which is that those documents. I mean, that's an assumption on top of an assumption, right? Our point is we don't know whether the court considered it at all because it was perfectly entitled at that point in time to address the merits, which were straightforward rather than the jurisdictional question. That is fair, Your Honor, and I'm happy to agree with that point. I want to just briefly touch on the issue raised about the facial versus factual attack on jurisdiction, which is that the court doesn't have to decide this issue first of all because it's been forfeited. It wasn't raised until the reply brief on appeal. And it actually contradicts the opening brief where a plaintiff multiple times conceded the court may consider extrinsic evidence. And he did rely on that evidence in his briefs in the district court and in his opening brief in this court. But even if it weren't forfeited, it wouldn't make a difference here because plaintiff himself incorporated most of the documents into his amended complaint at JA-69. And he submitted many additional documents and incorporated others into the motion to dismiss opposition at JA-127, which would make those documents fair game for consideration even under Rule 12b-6. And I think if the court were inclined to reach the merits, it's clear that everyone understood this as a factual attack. There was a large amount of extrinsic material submitted in favor of and in opposition. Can I ask a final question? Sure. I asked your colleague about this. We think about Becerra and Maury as being cases about the process and how that gets protection even though it's not the ultimate decision. But both of those are individual decisions, right? Becerra and Maury are specific to an individual. And here, what we're not allowing inquiry into is like the maintenance of a database, which is not specific to Mr. Patel, right? The government's not making a decision about investigating or not or failing a test or not. Why should we extend Egan to that type of decision as opposed to the specific decision that's made in Becerra or Maury? You're absolutely right. Becerra and Maury obviously involved decisions at the end. And I think it's partially a factual point that I've tried to make is that we have this odd situation where the DOD simply lacks authority to do anything with the IR right now, but it will certainly investigate it and adjudicate it once it becomes appropriate to do so. And the second point is that, obviously, Becerra and Maury recognize the process point, but there's specifically a sentence in Egan that I think really gets at this. Which is, there's the first sort of, I see my time's expired. May I finish? Yes, please. Thank you. It is not reasonably possible for an outside non-expert body to review the substance of such a judgment, predictive judgment, and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. That's the heartland decision-oriented part of it. And then the next sentence says, nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk. That's Egan at page 5.9. And that is exactly what we have here, is the claim at its base asks a court to go in and decide whether this IR is actually relevant or actually necessary to a clearance determination. And that's something that the decision-makers with a specialized expertise in adjudicating security clearances have to make that call. Thank you, Your Honors. And we ask that the court affirm the district court's judgment. All right. Thank you. Ms. Brown, you have four minutes in rebuttal. May it please the court. I have three points on rebuttal. First, I would like to draw attention to Reinbold. Reinbold shows that the Egan bar does not apply to records. It applies to national security clearance investigations. In Reinbold, there are two decisions made. The first stating that Egan barred review of a claim that required the court to determine whether an individual's security clearances were wrongly suspended. Suspended. And the second was a records decision. And the court went ahead and examined that on the merits. Second, the incident report is sitting in J-PASS. It is collecting dust in the sense that the Department of Defense has never investigated or adjudicated this information. Yet for Mr. Patel, this incident... You don't disagree with the idea that the DOD is barred from doing so under the applicable law? They can't investigate it until it's relevant, right? So they can't investigate it until Mr. Patel either has a job or some relevance has come to issue, right? Sure. Yes, Your Honor. But the Egan, in our understanding of Egan, it is to bar the review of the executive branch's as to a national security matter, a decision or an investigation, neither of which has been made here. There has been... Mr. Patel is not second-guessing any decision made by the government here. And moreover... Why isn't he questioning the decision to maintain this incident report in the J-PASS? Right? Like that's what they... I mean, it seems like maybe he's questioning that decision. That's a decision of the government, right? Yes, Your Honor. That is correct. I should have been more specific in my language. Mr. Patel is not questioning any predictive judgment regarding an individual. So in the cases of Egan or Mallory or Becerra, these were judgments made by the government as regards... Why was Becerra a predictive judgment? Becerra just says, we need to investigate. That's not a predictive judgment itself, right? We need more information, right? You might say like the decision to hold on to an IR and a J-PASS. Well, in that instance, the Navy had sufficient reasons to investigate the plaintiff's potential security risk and that we believe goes to Egan. And here there's been no adjudication, no beginning of an investigation here. So in Becerra, you think it turns on the court finding that there were sufficient reasons? It evaluated the reasons that the Navy gave for instituting an investigation? I thought I understood Becerra to say, it didn't matter what the reasons are, we don't get to second guess that judgment. The decision to institute an investigation, we don't get to second guess, as you said, the sufficient reasons or find them insufficient, right? That's just unreviewable. Yes, Your Honor. And there is no decision to, because there was a decision to investigate there. So that is where I'm distinguishing this. There is no decision to investigate. I know my colleague speaks of the potential of a future decision. But the fact is that there is nothing, no cases cited that show that Egan covers the potential of a future security, national security investigation. So without making any determination as to whether the information, well, thank you, Your Honor, for your time today. All right, thank you. We appreciate the arguments of both Ms. Brown and Mr. Baumhardt. And we particularly want to recognize and thank the Georgetown University Law Center Appellate Litigation Program for your court-appointed work on behalf of Mr. Challin. We'll come down and greet counsel and proceed to our last case.
judges: Stephanie D. Thacker, Julius N. Richardson, DeAndrea Gist Benjamin